**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

VANIA DE ARMAS RAMOS,

Petitioner

v. No. 2:26-cv-01019-KG-GBW

MARKWAYNE MULLIN, Secretary,
U.S. Department of Homeland Security; et al.,

Respondents.

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**
**AND DIRECTING RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER**

This matter is before the Court on Petitioner Vania De Armas Ramos's Petition for a Writ of Habeas Corpus ("Petition"), Doc. 1, the Government's Response, Doc. 7, Petitioner's Reply, Doc. 10, and Petitioner's Motion for Temporary Restraining Order, Doc. 12. For the reasons below, the Court grants the Petition.

## *I. Background*

Petitioner is a native and citizen of Cuba who entered the United States with inspection on December 15, 2023. Doc. 7 at 2. She was granted parole and released pending further immigration proceedings. Doc. 1 at 6. Her parole did not expire until December 13, 2025. *Id.* On August 3, 2025, Petitioner was arrested following an accident involving damage to a vehicle. Doc. 7 at 2. The Department of Homeland Security ("DHS") issued a Notice to Appear charging Petitioner as removable, issued an I-200 Warrant for Arrest, and lodged an immigration detainer. *Id.* Petitioner was transferred to the custody of Immigration and Customs Enforcement ("ICE") on August 5, 2025. She has been continuously detained at the Otero County Processing Center in Chaparral, New Mexico, since that date. Doc. 1 at 3.

On January 5, 2026, DHS moved to pretermit Petitioner's application for adjustment of status. Doc. 7 at 2. An immigration judge granted the motion on January 16, 2026, and ordered Petitioner removed to Ecuador. *Id.*; Doc. 7-5 at 1. Petitioner subsequently filed a petition for writ of habeas corpus on February 18, 2026, seeking immediate release or an individualized bond hearing under 8 U.S.C. § 1226(a). *De Arma Ramos v. Noem*, No. 26-cv-455-KG-KRS, Doc. 1 at 14 (D.N.M. Feb. 18, 2026). This Court granted the petition and ordered Respondents to provide Petitioner with a bond hearing before an immigration judge within seven days. *See id.* at Doc. 9. On March 10, 2026, an immigration judge denied bond, concluding that Petitioner was a flight risk. Doc. 7 at 3. Petitioner filed the present action on April 3, 2026, arguing for the first time that Respondents unlawfully terminated her parole without proper notice. Doc. 1 at 5. Respondents assert in response that Petitioner's second petition should be dismissed as an abuse of the writ as Petitioner could have, but failed to, include her due process claim in her first petition. Doc. 7 at 3–5.

## *II. Legal Standard*

### *A. Abuse of the Writ Doctrine*

A petition for a writ of habeas corpus seeks "release from unlawful physical confinement[.]" *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973). Federal courts have jurisdiction to review habeas petitions filed by noncitizen detainees alleging "custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In habeas corpus proceedings, "a federal court possesses power to grant *any form of relief necessary* to satisfy the requirement of justice." *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992) (citation modified). Where, as here, a petitioner files multiple § 2241 petitions, the later-filed cases generally proceed in one of two ways. If the first § 2241 case is still pending, the later filed petition may be dismissed

as duplicative and without prejudice. *See, e.g.*, *Horbenko v. Lyons*, 26-cv-0751-KWR-DLM (dismissing duplicate Section 2241 immigration petition); *Anis v. Bondi*, 26-cv-0865-KG-DLM (same); *Leon-Chapa v. Janecka*, 26-cv-1060-MIS-GBW (same); *Izquierdo v. Warden*, 26-cv-1117-SMD-JHR (same). The petitioner is then free to continue prosecuting claims in his or her existing § 2241 case. *Id.*

If the second petition is filed after a ruling on the merits, the Court may dismiss the second petition as an abuse of the writ. *See Tashchian v. Warden of Golden State Annex Det. Facility*, 2025 WL 3194356, at *1 (E.D. Cal. Oct. 2, 2025) (dismissing immigration petition based on the abuse of the writ doctrine). The "abuse of the writ" doctrine developed in the case law and is similar to the statutory bar on successive habeas petitions under 28 U.S.C. §§ 2254 and 2255. *See Calderon v. Thompson*, 523 U.S. 538, 558 (1998) (noting the statutory "provisions [applicable to Section 2254] do not govern" Section 2241 proceedings, but they "inform [judicial] consideration" of the abuse of the writ doctrine); *Stanko v. Davis*, 617 F.3d 1262, 1268 (10th Cir. 2010) (discussing the statutory bar applicable to Section 2254 and 2255 proceedings and the abuse of the writ doctrine applicable to Section 2241 proceedings).

The abuse of the writ doctrine permits courts to dismiss successive § 2241 claims that were raised in a prior petition as well as new "claims [that] could have been raised in an earlier [petition] … but were not." *Stanko*, 617 F.3d at 1270. *See also Petrocelli v. Angelone*, 248 F.3d 877, 884 (9th Cir. 2001) ("Generally, the abuse of the writ doctrine 'forbids the reconsideration of claims that were or could have been raised in a prior habeas petition."). The Government can raise the doctrine in an answer, but it can also be raised *sua sponte*. *See Oleksandr v. Warden*, 2026 WL 1480418, at *2 (E.D. Cal. May 27, 2026) ("a court can raise abuse of the writ sua sponte"); *Femia v. United States*, 47 F.3d 519, 523 (2d Cir. 1995) (same).

Once the Court identifies claims that were raised in a prior petition (or could have been raised), "[t]he burden to disprove abuse … becomes petitioner's." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). Petitioner must "show that a fundamental miscarriage of justice would result from a failure to entertain the claim." *Id.* at 494-495.

***B. Termination of Parole Under § 1182(d)(5)(A)***

The Immigration and Nationality Act ("INA") and its implementing regulations outline the appropriate procedures for the detention and removal of noncitizens without legal status in the United States. *See* 8 U.S.C. §§ 1101-1537. "Noncitizens who arrive at a port of entry without a visa or other entry documents . . . are deemed inadmissible under 8 U.S.C. § 1182(a)(7)." *Mendibaev v. Lyons*, No. 1:25-cv-01308-DHU-GBW, 2026 WL 917457, at *3 (D.N.M. Apr. 4, 2026) (internal quotation marks and citation omitted). Once a noncitizen is deemed inadmissible, "the immigration officer must order the noncitizen's removal unless the noncitizen indicates an intention to apply for asylum or fear of persecution." *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(i)). The Government may place the noncitizen into expedited removal proceedings, *see* Section 1225(b)(1), or place the noncitizen into regular removal proceedings under Section 1229(a), *see id.*

Two provisions of the INA govern the detention of noncitizens pending removal proceedings. *See Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018). First, Section 1225 governs noncitizens detained at a port of entry or shortly after entry, who are treated as "[noncitizens] seeking admission into the country." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020). Absent exceptions irrelevant here, Section 1225 "mandates detention and affords no bond hearing." *Pu Sacvin v. De Anda-Ybarra*, No. 2:25-cv-01031-KG-JFR, 2025 WL 3187432, at *1 (D.N.M. Nov. 14, 2025).

By contrast, Section 1226(a) sets forth "the default rule" for detaining noncitizens "already in the country." *Jennings*, 583 U.S. at 303. Section 1226(a) authorizes the arrest and detention of noncitizens, "on a warrant issued by the Attorney General . . . pending a decision on whether [they are] to be removed." Under federal regulations, a noncitizen detained under § 1226(a) is entitled to an individualized bond hearing at the "outset of detention." *Jennings*, 583 U.S. at 306.

Immigration parole is a narrow exception to the otherwise mandatory detention of noncitizens under Section 1225(b)(1). Under Section 1182(d)(5)(A), a noncitizen applicant for admission who is ordinarily subject to mandatory detention under Section 1225(b)(1) may be paroled into the United States pending the resolution of their immigration proceeding. The discretionary decision to grant parole rests with the Secretary of DHS, who may parole noncitizens to serve "urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). "[W]hen the purposes of such parole [], in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* Immigration parole terminates automatically if the parolee departs the United States or the authorized parole period expires. 8 C.F.R. § 212.5(e)(1). If parole is not terminated automatically, then early termination requires "written notice" to the noncitizen. § 212.5(e)(2). Service of a "charging document" to the noncitizen is sufficient notice to terminate parole "unless otherwise specified." *Id.*

## *III. Analysis*

The Court concludes that (A) Petitioner's second habeas petition does not constitute an abuse of the writ, and (B) the termination of Petitioner's parole without notice violates due process.

### *A. Petitioner's second habeas petition is not an abuse of the writ.*

Respondents contend that "Petitioner's second habeas petition raises the same due process claim as her first petition and a new statutory claim that could have been raised in her first petition but was not." Doc. 7 at 4. In Respondent's view, "Petitioner could have and should have brought this antecedent statutory claim as part of her first petition." *Id.* at 5. The Court agrees. In Petitioner's previously adjudicated petition, this Court granted Petitioner a bond hearing, finding that by living in the United States, Petitioner developed a protected liberty interest in remaining free from arbitrary detention. *De Arma Ramos v. Noem*, No. 26-cv-455-KG-KRS, Doc. 9 at 4–5 (D.N.M. Mar. 6, 2026). Petitioner could have raised the argument that her detention was lawful at its inception and argued for release, but failed to do so. *See id.* at Doc. 1.

Nonetheless, the Court concludes that a miscarriage of justice would occur if the Court declined to hear Petitioner's argument. Petitioner asserts that "courts within this District have further developed and clarified the legal framework governing parole termination" since the first petition was filed. Doc. 10 at 2. The Court agrees that the law on such petitions was significantly less clear in February 2026 when Petitioner first sought habeas relief. Since that time, Petitioner has acted with reasonable diligence in raising the claim presented here— namely Respondent's failure to properly terminate her parole. Considering the timing of the earlier petition and the nature of the constitutional claim being raised here for the first time, the Court is persuaded that Petitioner has shown good cause to excuse her failure to raise the due process

claim in her first petition. *See, e.g.*, *Ozbalik v. LaRose*, No. 26-cv-4239-JES-SBC, 2026 WL 2455825, at *2 (S.D. Ca. Aug. 21, 2026) (finding good cause to excuse petitioner's failure to raise claim in prior petition given rapidly evolving law governing habeas petitions). The Court therefore declines to deny the Petition for abuse of the writ and reaches the merits of Petitioner's claim.

***B. Petitioner's detention violates due process.***

Petitioner seeks immediate release from immigration custody on the basis that her parole was not properly terminated before she was detained. Doc. 1 at 2–3. The Court agrees and concludes that: (1) Petitioner did not receive any notice of the Government's termination of her parole; (2) the Government's failure to provide Petitioner with written notice violated her constitutionally protected liberty interest under the Due Process Clause of the Fifth Amendment; and (3) the appropriate remedy for Petitioner's unlawful detention is immediate release.

1. <u>Petitioner did not receive any notice terminating her parole.</u>

As a preliminary matter, the Court must determine whether Petitioner received adequate notice regarding the termination of her parole. Here, the uncontested facts show that Petitioner was paroled into the country for two years until December 13, 2025, and that she complied with all of the conditions of her release. Doc. 1 at 2, 6. The record also indicates that ICE served Petitioner with three documents: a Notice to Appear, an I-200 Warrant for Arrest, and an I-286 Notice of Custody Determination. Doc. 7 at 2, Doc. 7-1, Doc. 7-3, Doc. 7-4. However, all three documents fail to satisfy § 212.5(e)(2)(i)'s notice requirement as none make any reference to Petitioner's parole. *See A.A. v. Crawford*, No. 3:26-cv-301, 2026 WL 1601798, at *11 (E.D.Va. June 4, 2026) (concluding that Government failed to provide petitioner notice before terminating parole because charging documents failed to mention petitioner's parole status); *Khudaev v.*

*Blanche*, 2026 WL 1602029 (D.N.M. June 4, 2026) (concluding documents were insufficient to provide notice of termination of parole where documents failed to "include[] language notifying Petitioner that his parole was terminated"). The Court therefore finds that Petitioner did not receive any notice terminating her parole.

2. <u>The Government's failure to provide any notice violated Petitioner's procedural due process rights.</u>

Next, the Court must determine whether the Government's failure to provide Petitioner with adequate notice before terminating her parole violated Petitioner's due process rights. The Due Process Clause of the Fifth Amendment prohibits the Government from depriving any person "of life, liberty, or property without due process of law." U.S. Const. amend. V. In immigration proceedings, noncitizens subject to removal are only entitled to minimal due process protections—namely, "the opportunity to be heard at a meaningful time and in a meaningful manner." *de la Llana–Castellon v. INS*, 16 F.3d 1093, 1096 (10th Cir. 1994) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)); *but see United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) ("[Noncitizens] receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country."). As a result, "any alleged liberty interest [in discretionary immigration relief] must be created by statute or regulation." *Sosa-Valenzuela v. Holder*, 692 F.3d 1103, 1112 (10th Cir. 2012) (citation omitted). Courts analyze due process claims in two steps. First, they evaluate whether a protected liberty interest exists, and second, they examine whether the procedures used to deprive that interest were constitutionally sufficient. *Ky. Dep't of Corrections v. Thompson,* 490 U.S. 454, 460 (1989).

Protected liberty interests "may arise from two sources—the Due Process Clause itself and the laws of the States." *Id.* (citation omitted). Here, the applicable regulation—8 C.F.R.

§ 212.5(e)(2)(i)—requires the Government to provide a noncitizen with "written notice" in the form of an individualized "charging document" before terminating parole. Because this regulation "substantively limit[s] the exercise of official discretion" by requiring the Government to provide written notice, the Court concludes it affords Petitioner a protected liberty interest. *Sosa-Valenzuela*, 692 F.3d at 1112 (citation omitted); *see also Alcide v. de Anda-Ybarra*, No. 1:26-cv-00249-KWR-GBW, 2026 WL 622663 at *5–6 (D.N.M. Mar. 5, 2026) (finding 8 C.F.R. § 212.5(e)(2)(i) affords paroled noncitizens a protected liberty interest). The Court further concludes that the Government violated Petitioner's protected liberty interest because Petitioner did not receive any notice terminating her parole.

Because the Court has determined the relevant regulation affords Petitioner a liberty interest, the Court must also determine what amount process is due. *See Thompson,* 490 U.S. at 460. In the immigration context, courts apply the framework established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See*, *e.g.*, *Landon v. Plasencia*, 459 U.S. 21, 34 (1982); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020); *Hernandez v. Cremer*, 913 F.2d 230, 238 (5th Cir. 1990). Under *Mathews*, the Court balances three factors: (1) "the private interest" affected; (2) "the risk of erroneous deprivation" through the procedures used and probable value of additional safeguards; and (3) "the Government's interest," including the fiscal and administrative burdens of additional procedures. 424 U.S. at 335.

The Court finds the *Mathews* factor weighs heavily in favor of Petitioner, who has a significant and substantial private interest in remaining free from detention after living outside of physical custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The revocation of Petitioner's parole

without notice severely undercuts her due process right "to be heard at a meaningful time and in a meaningful manner." *Sosa-Valenzuela*, 692 F.3d at 1112.

The second *Mathews* factor also favors Petitioner. "The value of adhering to [this] regulatory safeguard . . . is very high . . . [b]ecause there are no other formal mechanisms for review or opportunities to be heard[.]" *Alcide*, 2026 WL 622663 at *6. The risk of erroneous deprivation is especially high in this case because there is no procedure to challenge the termination of parole once it has been affected.

Finally, the third *Mathews* factor favors Petitioner. While the Government has a strong interest in enforcing its immigration laws, its interest in terminating parole and detaining a noncitizen without any written notice or explanation is low. *Id.* The Court acknowledges that providing Petitioner with written notice of termination necessarily entails some degree of "administrative burden[]." *See Mathews*, 424 U.S. at 335. But "[c]ourts generally have found that the cost of providing a bond hearing is relatively minimal," *Hilario M.R. v. Warden, Mesa Verde Det. Ctr.*, No. 1:24-cv-009998-EPG-HC, 2025 WL 1158841, at *9 (E.D. Cal. Apr. 21, 2025) (collecting cases), and providing Petitioner with written notice of the termination of her parole is no more burdensome. Additionally, the relevant regulation provides the Government may terminate parole "when in the opinion of [a designated official], neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States[.]" 8 C.F.R. § 212.5(e)(2)(i). Therefore, written notice does not interfere with the Government's "sovereign prerogative" to decide which noncitizens to admit. *Landon*, 459 U.S. at 32.

In sum, all three *Mathews* factors weigh in favor of Petitioner. The Court therefore concludes that the Government violated Petitioner's due process rights and, as a result, she is unlawfully detained.

3. Immediate release is the proper remedy.

The Court further concludes that the immediate release of Petitioner is the appropriate remedy. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("The typical remedy for [unlawful executive] detention is, of course, release."); *see also* 28 U.S.C. § 2243 (authorizing district courts to dispose of habeas cases "as law and justice require"). This conclusion is also consistent with that of other district courts, which have found "the appropriate remedy, if not the only remedy, is immediate release." *Alcide*, 2026 WL 622663, at *6; *see also Rojas-Ospina v. Baltazar*, No. 1:26-cv-02075-NYW, 2026 WL 1601680 at *3 (D.Colo. June 4, 2026); *Andreu v. Baltazar*, 831 F. Supp. 3d 1103, 1107 (D.Colo. 2026); *Khudaev v. Blanche*, No. 2:25-cv-01291-KWR-JHR, 2026 WL 1602029 at *10 (D.N.M. June 4, 2026).

The Court acknowledges that Petitioner's parole subsequently expired on December 13, 2025. *See* Doc. 1 at 6. But that fact alone cannot cure the Government's failure to provide Petitioner with the written notice terminating parole required by regulation and due process. DHS's regulations are abundantly clear: early termination of a noncitizen's parole under 8 C.F.R. § 212.5(e)(2)(i) requires written notice. It is also equally clear that Petitioner was not provided with any notice. Under the circumstances, any lesser remedy than immediate release would be inadequate because DHS's regulations do not provide any procedure to challenge the termination of parole once it has been terminated.

## ***IV. Conclusion***

For the reasons above, the Petition for Writ of Habeas Corpus, Doc. 1, is granted. The Court orders:

1. Respondents shall Release Petitioner from custody within forty-eight (48) hours of this Order.

2. Upon Petitioner's release, Respondents must return all of her property, including any identification documentation that was in her possession when she was detained.
3. Respondents shall provide a copy of this Order to Petitioner.
4. Respondents shall file a status report within five (5) business days of this Order to certify their compliance.
5. If Petitioner is re-detained prior to final order of removal, all applicable regulations and procedures must be followed.
6. Petitioner's Motion for Temporary Restraining Order, Doc. 12, is denied as moot.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.